[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR ORDER (DOCKETENTRY NO. 139
The defendant has moved that the court rule upon the Family Relations Report of February 27, 1997, regarding the division of tangible personal property. On August 6, 1996, a decree of dissolution of marriage was entered. On that date, the parties' executed a property settlement agreement which was reviewed, approved and entered as the judgment of this court. Paragraph 5.2 of that agreement and, therefore, of the judgment provides as follows:
 "The parties agree to equitably divide the furniture, furnishings and possessions within the premises at 26 Meadow Road, Riverside, Connecticut, within two weeks of the date of dissolution, the Husband shall visit the premises to prepare an inventory. Said inventory shall be submitted to Family Relations for mediation. In the event CT Page 8230 mediation is not successful, an equitable division of the same shall be made by the court after hearing evidence. The parties agree to permit the court to retain jurisdiction with respect to this subparagraph." (Emphasis supplied.)
The matter was referred to Family Relations on August 19, 1996 and a report rendered on February 27, 1997. (See plaintiff's exhibit D[1].) The mediation was accomplished by Joseph Carroll, Jr., Family Relations Counselor. The mediation was unsuccessful. The defendant was willing to accept Mr. Carroll's recommendations with some minor corrections. The plaintiff, however, has indicated a desire to have numerous additional items. Many of these items she wishes because they are "part of the landscape of the house's and if they were to go to the defendant, the children would no longer feel that the home was still their home; that her "goal was to try to maintain stability and consistency." She has described the hutch in the kitchen as "the hearth of our home" and "part of the children's lives."
The court knows of no rule that the best interests of the children should be considered in the division of tangible personal property.
It is, indeed, a shame that the parties have been unable to agree. There has been no evidence to demonstrate that any of the disputed items are unique, priceless or irreplaceable. (See, for example, defendant's exhibits 8, 9 and 12.) Each of the parties have ample liquid funds to replace any of the items on the disputed list and the plaintiff, at least, has incurred consequential legal fees for litigating this issue.
There has been no evidence to suggest that Mr. Carroll, the mediator, was biased or prejudiced in his division of this property. He testified repeatedly that he tried to be fair and equitable. The court finds, based upon his testimony, that each party had an ample opportunity to be heard and to express their wishes.
In accordance with the provisions of the separation agreement, the court has held an evidentiary hearing. Both parties have had a full opportunity to be heard, to present evidence and their arguments. The court has been guided by the provisions of the agreement providing for an equitable division of the property and has considered all of the evidence together CT Page 8231 with the report of Mr. Carroll. Accordingly, the court orders the tangible personal property to be divided as follows:
1. That tangible personal property in the defendant's possession, other than that owned by others, shall be wholly his free of any claim by the plaintiff including, but not by way of limitation, the 32" television.
2. The small silver picture frame which was the plaintiff's mother's, received as a gift upon her thirtieth wedding anniversary, shall be returned to the plaintiff by the defendant and this property shall be the property of the plaintiff.
3. The two framed prints referred to as "Drawings of Rooms" shall be the property of the defendant free of any claim by the plaintiff.
4. The distribution as determined by Mr. Carroll (see plaintiff's exhibit D) between the parties shall be made as therein set forth and that property designated as "DS" shall be the plaintiff's free of any claim or demand by the defendant and that property designated as "GG" shall be the defendant's free of any claim or demand by the plaintiff except for the following items which shall be the plaintiff's free of any claim or demand by the defendant:
 a. two of the four bridge chairs under Sun Room on page 9;
b. the Hirschfeld book under Library on page 10;
c. the potholder on the wall under Kitchen on page 11;
 d. the Yamaguchi print over the bed under Master Bedroom on page 12;
 e. the pancake frying pan under Closet No. 2 on page 13.
5. The so-called "disputed items" are to be the property of that individual designated in Mr. Carroll's report (plaintiff's exhibit D).
6. The plaintiff's claims for relief for personal property CT Page 8232 division, except as set forth above under paragraph 4, subparagraph a through e, are denied.
7. The jar with cover on page 5 under Jenna's Bathroom shall be the property of Jenna.
8. The fireplace tool holder under Living Room on page 10 shall be removed by the defendant with the greatest care possible and the holes filled and painted. If the defendant is unable to perform this work himself, he shall arrange for the work to be done professionally by others at his expense. Plaintiff shall have the final say if the work is done by the defendant as to its acceptability and, if not acceptable, the work shall be done professionally at the defendant's expense.
9. The light fixture at the top of the stairs shall be removed by the defendant and shall be replaced by the fixture originally removed. If the fixture originally removed cannot be found, the plaintiff shall purchase a fixture which the defendant shall install as replacement. If the defendant chooses, he may have this work done by others at his expense.
10. Those items on pages 12 and 13 entitled "Donate to Charity for Tax Deduction" shall be wholly the plaintiff's to do with as she chooses except for the old stereo system, Hitachi tape deck, Plarmon Cardon Amplifier, Band O turntable which shall be wholly the defendant's to do with as he chooses.
11. The adult bikes under Outdoors and Garage on page 4 shall be split as recommended by Mr. Carroll (see Split 12). However, if there should prove to be only one bike, any man's bike shall be the property of the defendant and any woman's bike shall be the property of the plaintiff.
12. The "splits" on page 8 shall be accomplished as follows:
 a. Split 1: to the extent possible, photos shall be divided between the parties. If there are photos which the plaintiff retains and the defendant wishes to have copied, he shall arrange for reproduction of the same, shall pay for such reproduction, and shall return the originals to the plaintiff and receive from the plaintiff reimbursement for one half of the cost of such reproduction. CT Page 8233
 b. The defendant shall receive the smaller wedding album. If he wishes a copy of any of the larger photos, he shall arrange for reproduction of the same, shall pay for such reproduction and shall return the originals to the plaintiff and receive from the plaintiff reimbursement for one half of the cost of such reproduction.[2]
 c. There shall be no further split of books (splits 3 and 8).
 d. Splits 4, 5, 9 and 15 shall be accomplished as set forth in subparagraphs a and b above. To the extent the frames for these photos have been distributed, those designations shall control. For those frames not so distributed, they shall be divided between the parties.
 e. There shall be no further splits of the kitchen items designated as splits 10 and 11.
 f. The defendant shall receive one oscillating fan (split 13).
 g. There shall be no further split of split 14 (towels and dish cloths).
13. The splits a through j on page 14 shall be accomplished as set forth on page 14 of Mr. Carroll's report.
The parties shall meet, each with another individual present of her or his choosing, if either wishes, such other individual's presence is not necessary, simply elective, for each party. This meeting shall be for division of photographs. This meeting shall be at the convenience of the parties and to take place without the children present in the home. The defendant may also take such small items designated for him as he chooses at this time. This meeting shall be held within two (2) weeks of the date of this decision.
The parties shall select a date that is mutually convenient for the defendant's removal of the remaining items designated for him. Such date shall also be at a time when the children will not be present in the home. The court anticipates that the meetings CT Page 8234 and all contact between the parties shall be as responsible, intelligent adults and that there shall be no disharmony expressed between the parties. Either party may have counsel present as the "other individual" as hereinbefore referred to.
With regard to defendant's work under paragraphs 8 and 9 as set forth above, it may be done at the first meeting, if there is sufficient time, at the second meeting, or at another time to be arranged between the parties.
All division and work as hereinbefore set forth shall be accomplished within thirty (30) days of the date hereof, except in the event of professional work under paragraphs 8 and 9, in which event the work shall be accomplished within forty-five (45) days of this date.
EDGAR W. BASSICK, III, JUDGE
MEMORANDUM OF DECISION ON MOTION FOR CONTEMPT (DOCKETENTRIES NO. 132 AND 134)
BASSICK, JUDGE.
The parties' marriage was dissolved on August 6, 1996, at which time the parties' separation agreement dated August 6, 1996 was presented to the court, approved and incorporated by reference in the decree. At the time of the decree, the defendant's employment had terminated except that he was to continue on the payroll through the end of 1996. This was understood by the plaintiff at the time (see plaintiff's exhibit S[1], the transcript of the proceedings on August 6, 1996, page 7; see also footnote on page 1 of defendant's financial affidavit of August 6, 1996).
The judgment provided that from September 1, 1996 to and CT Page 8235 including January 1, 2008, the monthly sum of $5833.33 ($70,000 per year) should be paid by the defendant to the plaintiff by way of unallocated alimony and support, the defendant being entitled to seek modification when and as each of the children attained the age of majority. (Paragraph 3.2 of the agreement of the parties.) On December 4, 1996, the defendant filed a Motion for Modification of Alimony and Support "due to a substantial change in his circumstances." (Docket entry no. 130) At the time of the defendant's filing of this motion, there was no arrearage.
On January 2, 1997, the motion for modification came on to be heard on short calendar. It was apparently continued at that time. The parties appeared, again, on short calendar on January 16, 1997 before Moran, J. on plaintiff's motion for continuation which motion was granted. Since there was no agreement on retroactivity, Judge Moran ordered that the defendant "will be entitled to argue that it is retroactive to the day of the filing of the motion." (See plaintiff's exhibit A.)
The Motion for Contempt dated January 7, 1997, is based upon the defendant's failure to pay alimony and support in accordance with the judgment since January 1, 1997. The defendant paid alimony and support for the months of January, February and March in the amount of $2,000 for each month and for the period April 1, 1997 to date an amount of $1500 per month.
Section 464 of the Practice Book provides as follows:
 "(a) Upon an application for a modification of an award of alimony pendente lite, alimony or support of minor children, filed by a person who is then in arrears under the terms of such an award, the court shall, upon hearing, ascertain whether said arrearage has occurred without sufficient excuse so as to constitute a contempt of court, and, in its discretion, may determine whether any modification of current alimony and support shall be ordered prior to the payment, in whole or in part, as the court may order, of any arrearage found to exist."
For the court to find a party in contempt, it must find that the party has intentionally and wilfully failed to abide by or disregarded the court order. Bryant v. Bryant, 228 Conn. 630
(1994). CT Page 8236
The court finds that there has not been an intentional and deliberate disregard of the court's order on either of the plaintiff's motions for contempt. On the issue of arrearage, the court shall deal with that in its memorandum of decision on the defendant's motion for modification.
On the plaintiff's Motion for Contempt dated December 19, 1997, that motion is based upon a claimed failure on defendant's part to provide information concerning monies "which he has invested or set aside, whether in trust or not, for the benefit of the minor children." It is claimed that this violates the provisions of Paragraph 2.3 of the parties' Separation Agreement which provides in part as follows: "Each of the parties will make available to the other reports from third persons concerning the health, education or welfare of said children." This provision of the Separation Agreement provides that "reports from third persons" should be made available. There has been no evidence of such "reports from third persons" not being made available. The defendant's position is well maintained that this provision of the agreement contemplates reports concerning "health, education or welfare" and does not contemplate information concerning monies invested for the benefit of the children.
Docket entry no. 132 is denied, no contempt is found. The court has ordered, however, that copies of the Zero Coupon Bonds and copies of the Bear Sterns accounts be furnished to the plaintiff within two weeks of July 24, 1997, and that the custodianship of the Fleet Bank accounts be transferred from the defendant to the plaintiff also within such period of time.
EDGAR W. BASSICK, III, JUDGE